# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

EVET CLAVON,

               Plaintiff,

     v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

              Defendant.

Case No.  CV 07-8101-JTL

MEMORANDUM OPINION AND ORDER

## PROCEEDINGS

On December 18, 2007, Evet Clavon ("plaintiff") filed a Complaint seeking review of the Social Security Administration's denial of her applications for Supplemental Security Income benefits and Disability Insurance Benefits.   On January 10, 2008, Michael J. Astrue, Commissioner of Social Security ("defendant"), filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum.  On January 25, 2008, plaintiff filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum.  Thereafter, on June 16, 2008, defendant filed an Answer to the Complaint.  On September 11, 2008, the parties filed their Joint Stipulation.

The matter is now ready for decision.

///

**BACKGROUND**

On or about June 5, 1997 and August 13, 1997, plaintiff filed applications for Disability Insurance Benefits and Supplemental Social Security Income benefits, respectively. (Administrative Record ["AR"] at 187-89, 63-65). Plaintiff alleged that beginning on March 31, 1992, she was unable to work because she suffered from carpal tunnel syndrome and "upper extremity difficulties." (AR at 76). The Commissioner denied plaintiff's application for benefits both initially and upon reconsideration. (AR at 190-91, 51-54, 57-60). Thereafter, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR at 61).

On March 17, 1999, the ALJ conducted a hearing in Long Beach, California. No testimony was taken and the matter was continued to allow plaintiff to retain counsel. (AR at 396-401). On April 28, 1999, the ALJ issued an Order of Dismissal dismissing the case because plaintiff allegedly failed to appear at the hearing. (AR at 194-95). On May 19, 2000, the Appeals Council remanded the case to the ALJ on the ground that the ALJ incorrectly stated that plaintiff failed to appear. (AR at 202).

A second hearing was held on February 15, 2001 in Los Angeles, California. (AR at 402-08). The hearing was continued to allow plaintiff to retain counsel. (AR at 406). A third hearing was held on May 23, 2001 in Los Angeles, California. (AR at 410-30). Plaintiff appeared with counsel. (AR at 410). Roger Bertoldi, M.D., a medical expert, appeared and testified. (AR at 420-29). Sandra Schneider, a vocational expert, appeared but did not testify. (AR at 410). After the hearing, additional medical evidence was obtained and admitted into the record. (See AR at 281-82, 262-77). On March 5, 2002, the ALJ issued a decision denying plaintiff's applications for benefits. (AR at 281-87). In his decision, the ALJ concluded that plaintiff suffered from the following severe impairments: carpal tunnel syndrome and cervical disc disease. (AR at 286). The ALJ, however, determined that plaintiff's impairments did not meet or equal a listed impairment in Appendix 1, Subpart P, and Regulation No. 4. (Id.). The ALJ found that plaintiff was not disabled pursuant to the Social Security Act because she retained the residual functional capacity to perform her past relevant work as a data entry operator and office clerk. (AR at 287).

On March 22, 2002, plaintiff filed a request with the Appeals Council for review of the ALJ's decision.  (AR at 291).  The Appeals Council remanded the case to allow the ALJ to obtain additional evidence concerning plaintiff's impairments and complete the administrative record; explain the weight given to treating, examining, and non-examining source opinions; evaluate plaintiff's subjective complaints; consider the combined effect of plaintiff's limitations; and provide the appropriate rationale for all findings.  (AR at 294-95).

On June 19, 2003, the ALJ conducted a supplemental hearing in Los Angeles, California.  (AR at 431-63).  Plaintiff appeared with counsel and testified.  (AR at 453-62).  Ronald Andiman, M.D., a medical expert, and Sandra Trost, a vocational expert, also appeared at the hearing and testified.  (AR at 437-53, 463).  On December 10, 2003, the ALJ issued a decision denying benefits.  (AR at 25-40).  In the decision, the ALJ concluded that plaintiff did not have any medically determinable impairments or combination of impairments that significantly limited her basic work abilities.  (AR at 40).  Ultimately, the ALJ found that plaintiff was not disabled pursuant to the Social Security Act.  (Id.).

On January 12, 2004, plaintiff filed a request with the Appeals Council for review of the ALJ's decision.  (AR at 20).  Plaintiff submitted additional evidence to the Appeals Council consisting of medical records from the East Los Angeles Health Task Force dated December 5, 2002 through January 28, 2004.  (AR at 378-95).  The Appeals Council denied plaintiff's timely request for review of the ALJ's decision.  (AR at 11-13).

Thereafter, plaintiff appealed to the United States District Court.  On February 24, 2006, this Court determined that the ALJ erred in finding that plaintiff did not have a severe impairment.  (AR at 502-504A).  The Court remanded the case for further proceedings and instructed the ALJ to consider the effect of all of plaintiff's impairments on her ability to function, without regard to whether each one, standing alone, was sufficiently severe.  (AR at 504A-505).  A supplemental hearing was held on May 30, 2007 in Los Angeles, California.  (AR at 506-532).  Plaintiff appeared at the hearing with counsel and testified.  (AR at 511-525).  Heidi Paul, Ph.D, a vocational expert, also testified at the hearing.  (AR at 525-531).

///

On July 20, 2007, the ALJ issued a decision denying in part, and granting in part, plaintiff's applications for benefits.  (AR at 475-486).  The ALJ determined that plaintiff had the following severe impairments: hand numbness and pain, chronic back pain, and hypertension.  (AR at 479-80).  The ALJ determined that plaintiff's conditions did not meet or equal any of the impairments listed in Appendix 1 of the regulations.  (AR at 480).  The ALJ determined that from March 31, 1992 through May 31, 2000, plaintiff had the residual functional capacity to perform a wide range of medium work, but could only reach with her arms and manipulate with her hands for four hours a day.  (AR at 480-81).  Due to these limitations, the ALJ determined that plaintiff was unable to perform her past relevant work as an insurance secretary and data entry clerk during this period.  (AR at 483).  Even with such limitations, however, the ALJ determined that plaintiff could have performed jobs which existed in significant numbers in the national economy.  Accordingly, the ALJ concluded that plaintiff was not disabled from March 31, 1992 through May 31, 2000.  (AR at 483-84).

Based on the evaluations of Accie M. Mitchell, M.D.,[1] and N. Nazir, M.D.,[2] the ALJ concluded that from June 1, 2000 through December 31, 2002, plaintiff "was unable to sustain even sedentary work on a regular and continuing basis" and was, therefore, disabled.  (AR at 481, 484).  The ALJ determined that plaintiff's medical condition improved as of January 1, 2003 and concluded that plaintiff had the residual functional capacity to perform a wide range of light work from January 1, 2003,  through the date of the decision.  (AR at 480-85).  The ALJ determined that after January 1, 2003, plaintiff was capable of performing her past relevant work as an insurance secretary and that she was no longer entitled to

---

[1] In the decision, the ALJ noted that Dr. Mitchell diagnosed plaintiff with depressive neurosis, hypertension, cephalgia, cervical disc disease, neuralgia of the upper right extremity, bilateral carpal tunnel syndrome and thoracic myositis.  (AR at 480; see AR at 257).  The ALJ also noted that Dr. Mitchell opined that plaintiff was a "poor candidate for rehabilitation" and was "totally disabled."  (AR at 480; see AR at 254).

[2] In the decision, the ALJ noted that Dr. Nazir determined that plaintiff "could not even perform sedentary work primarily because of carrying/lifting limitations [AR at 259-61]."  (AR at 480).

benefits.  (AR at 485).  The Appeals Council denied plaintiff's timely request for review of the ALJ's decision.  (AR at 465-66).

Thereafter, plaintiff appealed to the United States District Court.

**PLAINTIFF'S CONTENTIONS**

Plaintiff makes the following claims:

1.      The ALJ failed to properly consider the medical evidence in the record documenting plaintiff's treatment after December 2002.

2.      The ALJ failed to properly evaluate plaintiff's credibility.

**STANDARD OF REVIEW**

Under 42 U.S.C. Section 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied.  DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence means "more than a mere scintilla" but less than a preponderance.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson, 402 U.S. at 401.  This Court must review the record as a whole and consider adverse as well as supporting evidence.  Morgan v. Comm'r, 169 F.3d 595, 599 (9th Cir. 1999).  Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld.  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

**DISCUSSION**

**A.      The Sequential Evaluation**

A claimant is disabled under Title II of the Social Security Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . can be expected to last for

1   a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The Commissioner

2   has established a five-step sequential process to determine whether a claimant is disabled.

3   20 C.F.R. §§ 404.1520, 416.920.

4        The first step is to determine whether the claimant is presently engaging in substantially

5   gainful activity.  Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  If the claimant is engaging

6   in substantially gainful activity, disability benefits will be denied.  Bowen v. Yuckert, 482 U.S.

7   137, 141 (1987).  Second, the ALJ must determine whether the claimant has a severe

8   impairment.  Parra, 481 F.3d at 746.  Third, the ALJ must determine whether the impairment

9   is listed, or equivalent to an impairment listed, in Appendix I of the regulations.  Id.  If the

10  impediment meets or equals one of the listed impairments, the claimant is presumptively

11  disabled.  Bowen, 482 U.S. at 141.  Fourth, the ALJ must determine whether the impairment

12  prevents the claimant from doing past relevant work.  Pinto v. Massanari, 249 F.3d 840, 844-45

13  (9th Cir. 2001).  If the claimant cannot perform his or her past relevant work, the ALJ proceeds

14  to the fifth step and must determine whether the impairment prevents the claimant from

15  performing any other substantially gainful activity.  Moore v. Apfel, 216 F.3d 864, 869 (9th Cir.

16  2000).

17       The claimant bears the burden of proving steps one through four, consistent with the

18  general rule that at all times, the burden is on the claimant to establish his or her entitlement

19  to disability insurance benefits.  Parra, 481 F.3d at 746.  Once this prima facie case is

20  established by the claimant, the burden shifts to the Commissioner to show that the claimant

21  may perform other gainful activity.  Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir.

22  2006).

23  **B.    The ALJ's Consideration of the Medical Evidence in the Record**

24       Plaintiff alleges that the ALJ erred by failing to discuss the progress notes and treatment

25  notes from the East Los Angeles Health Task Force and the Los Angeles County Hospital,

26  respectively.  Plaintiff argues that the ALJ's failure to discuss the records documenting

27  plaintiff's treatment from 2002 to 2007 amounts to reversible error.  (Joint Stipulation at 7-8).

28  Plaintiff also argues that the ALJ's statement that the record was "rather sparse" after

December 2002 is false and evinces that the ALJ failed to properly review all of the evidence in the record.  Defendant responds that the ALJ properly reviewed the record and that the ALJ's residual functional capacity findings are supported by substantial evidence.  (Joint Stipulation at 10-18).  Defendant argues that evidence in the record supports the ALJ's determination that plaintiff's medical condition improved as of January 1, 2003.  (Joint Stipulation at 15-18).

At the May 30, 2007 hearing, the ALJ noted that plaintiff produced recent medical records from the East Los Angeles Health Task Force and admitted them into the record.  (AR at 509; see AR at 533-59).  Plaintiff testified that she was treated at the East Los Angeles Health Task Force from 1999-2006 and was currently undergoing treatment at another facility.  (AR at 518-19).  The ALJ left the record open for thirty days to allow plaintiff to submit additional evidence.  (AR at 530-31).  After the hearing, plaintiff submitted medical records dated October 20, 2006 through March 13, 2007 from H. Claude Hudson, M.D., of the Los Angeles County Hospital, and an attached letter dated May 31, 2007.  (AR at 560-86).

Plaintiff had previously submitted medical records from the East Los Angeles Health Task Force documenting her treatment from December 5, 2002 through June 5, 2004.  (See AR at 378-95).  A progress note dated December 17, 2003 notes that plaintiff complained of pain and numbness in her right wrist and the inability to "lift anything."  (AR at 387).  The remaining records note that plaintiff had a right wrist fracture and document complaints of wrist pain and treatment for routine ailments.  (See AR at 386, 388, 390-95).

The second set of records from the East Los Angeles Health Task Force document plaintiff's treatment from May 6, 2004 through June 2, 2006.  (See AR at 533-59).  Progress notes dated July 8, 2004 and September 23, 2004 indicate that plaintiff suffers from carpal tunnel syndrome.  (AR at 548, 551).  A progress note dated May 20, 2005 states that plaintiff had neck pain and numbness with involuntary movement of both arms, and pain and swelling in both elbows.  (AR at 543).  The progress note further states that plaintiff is unable to sit for ten minutes, has to stand frequently, and is unable to hold her arms in a forward position.  (Id.).  A progress note dated June 2, 2006 states that plaintiff had constant neck pain for the past two

years and is unable to afford the surgery recommended by a neurologist.  (AR at 535).

Plaintiff also submitted records of her treatment at the Los Angeles County Hospital. (AR at 560-86).  A treatment note dated October 20, 2006 indicates that plaintiff came in due to hypertension and chronic back pain and noted that plaintiff suffered from chronic neck pain and had a pain score of nine on a scale of zero to ten.  (AR at 565, 567).  A treatment note dated December 9, 2006 documents plaintiff's complaints of pain and numbness in her hands and her inability to use her hands due to pain and carpal tunnel syndrome.  (AR at 561).  The treatment note also indicates that plaintiff had a pain score of eight on a scale of zero to ten. (AR at 562).  A treatment note dated March 6, 2007 notes that plaintiff has chronic neck pain and that a magnetic resonance imaging test ("MRI") of plaintiff's neck was ordered.  (AR at 583-84).

In the decision, the ALJ found that medical improvement occurred in plaintiff's condition and determined that plaintiff was not disabled after January 1, 2003.  (AR at 484-85).  Medical improvement is related to a claimant's ability to work if there has been a decrease in the severity of the impairment or impairments present at the time of the most recent favorable medical decision, and an increase in the claimant's functional capacity to do basic work activities.  20 C.F.R. § 416.994(b)(1).  In determining whether medical improvement has occurred, the regulations require the Commissioner to "[c]ompare the current medical severity of that impairment(s) which was present at the time of the most favorable medical decision that [the claimant was] disabled or continue to be disabled to the medical severity of that impairment(s) at that time."  20 C.F.R. §416.994(b)(1)(vii).  If medical improvement has occurred, the Commission must "compare [the claimant's] current functional capacity to do basic work activities (i.e., [the claimant's] residual functional capacity) based on the previously existing impairments with [the claimant's] prior residual functional capacity in order to determine whether the medical improvement is related to [the claimant's] ability to do work."  Id.  If there is "a decrease in medical severity as shown by the symptoms, signs and laboratory findings," the Commissioner must then determine if it is related to the claimant's ability to do work.  20 C.F.R. § 416.994(b)(2)(ii).

When an examining physician provides "independent clinical findings that differ from the findings of the treating physician," such findings are "substantial evidence." Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985). Independent clinical findings can be either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence, or (2) findings based on objective medical tests that the treating physician has not considered. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007); see Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1985); Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). If there is substantial evidence in the record contradicting the opinion of the treating physician, the opinion of the treating physician is no longer entitled to controlling weight. 20 C.F.R. § 404.1527(d)(2). However, even when contradicted by an opinion of an examining physician that constitutes substantial evidence, the treating physician's opinion is still entitled to deference and the ALJ may not reject the treating physician's opinion without providing specific and legitimate reasons for doing so that are supported by substantial evidence in the record. Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998).

Here, the ALJ found that from June 1, 2000 through December 31, 2002, plaintiff "was unable to sustain even sedentary work on a regular and continuing basis" based primarily on her carrying/lifting restrictions. (AR at 481, 484). The ALJ then determined that medical improvement occurred in plaintiff's condition and concluded that plaintiff was no longer disabled as of January 1, 2003. (AR at 484-85). The ALJ based this determination on the findings of Robert A. Moore, M.D., a board certified psychiatrist and neurologist, who conducted a consultative neurological evaluation of plaintiff on December 6, 2002. (AR at 480; see AR at 329-37). The ALJ included the following discussion of Dr. Moore's findings in the decision:

> [Dr. Moore] diagnosed [plaintiff] with biomechanical neck and
> low back pain with muscle contraction headaches and recent
> right wrist fracture. Dr. Moore found no evidence of lumbar
> radiculopathy or active radiculopathy from the neck. Although
> the doctor noted previous Reports that reference [plaintiff's]
> bilateral carpal tunnel syndrome, he could not confirm this

1                      diagnosis upon examination.  In both his narrative associated

2                      with the examination and in a medical source statement, Dr.

3                      Moore assigned [plaintiff] the ability to perform a range of light

4                      work.

5 (AR at 480).  The ALJ adopted Dr. Moore's findings and concluded that plaintiff was no longer

6 disabled as of January 1, 2003.  (AR at 480, 481) ("Beginning on January 1, 2003 and

7 continuing through the date of this decision, [plaintiff] has had the residual functional capacity

8 for a wide range of light work, as identified by the medical source statement [by Dr. Moore.  (AR

9 at 334-37).]").[3]  Nothing in the ALJ's decision, however, indicates the significance of this date.

10 The ALJ does not cite to any specific event or evidence in the record to support the significance

11 of this date, nor is there anything significant about this date in the record.  In addition, the

12 medical improvement standard, requires medical evidence demonstrating an improvement

13 shown by the symptoms, signs and laboratory findings, and further requires the ALJ to

14 determine if it is related to the claimant's ability to do work related activities.  20 C.F.R.

15 §416.994(b).  Here, Dr. Moore's findings are insufficient to support the ALJ's medical

16 improvement findings.  The ALJ determined plaintiff was disabled from June 1, 2000 to

17 December 31, 2002 based on the findings of Dr. Nazir, plaintiff's treating physician who

18 determined plaintiff could not perform sedentary work primarily because of carrying/lifting

19 restrictions.  (AR at 480, 481; see AR at 259-61).  In the summary of the neurological

20 evaluation Dr. Moore performed on plaintiff, Dr. Moore noted that plaintiff suffered from a

21 recent fracture of the right wrist and that she had a hard cast on her right arm extending

22 ───────────────

23     [3]  Dr. Moore also opined that plaintiff's lower back complaints "appear to be present on a biomechanical basis" and found "no evidence of lumbar radiculopathy."  (AR at 333).  Accordingly,

24 Dr. Moore opined plaintiff could "stand and walk at least six hours out of an eight-hour day in two hour intervals," could sit "in an unrestricted manner," operate foot controls, and "frequently bend and

25 stoop."  (AR at 333, 334).  Due to plaintiff's "complaints of neck pain and subjective complaints of tingling in the hands," Dr. Moore limited plaintiff to only occasional to frequent pushing and pulling

26 and occasional to frequent simple gripping movements.  (AR at 333, 335).  Dr. Moore opined plaintiff could perform distal fine coordinated movements with her fingers "on anything but a

27 continuous basis" and is limited in her handling and fingering abilities.  (AR at 333, 336).  Dr. Moore concluded that plaintiff could occasionally lift and carry 40 pounds and frequently carry 20 pounds.

28 (AR at 333, 334).

beyond the elbow and wrist.  (AR at 330, 331).  Significantly, Dr. Moore noted that due to the cast, the range of motion of the right wrist and Tinel's sign could not be examined.  (AR at 331).  The ALJ even noted in the decision that Dr. Moore "could not confirm [plaintiff's bilateral carpal tunnel syndrome] diagnosis upon examination."  (AR at 480).  Because Dr. Moore was unable to assess the condition of plaintiff's right arm, Dr. Moore's clinical findings with regard to plaintiff's functional limitations in her upper extremities does not constitute substantial evidence to support the ALJ's finding that plaintiff no longer had the carrying/lifting restrictions that previously prevented her from performing sedentary work.  Therefore, his conclusion concerning plaintiff's upper extremity limitations based on that examination was not an "independent finding," and his opinion does not alone constitute substantial evidence to support the rejection of plaintiff's treating physicians' opinions.  See Reddick, 157 F.3d at 725.  The ALJ erred by failing to cite to substantial evidence in the record to support his determination that medical improvement had occurred and failed to properly compare plaintiff's functional capacity to do basic work activities before and after January 1, 2003.  See 20 C.F.R. § 416.994(b)(1)(vii).

Moreover, the ALJ's conclusion that plaintiff's condition improved as of January 1, 2003 appears to be based, in part, on his finding that "[s]ince the end of 2002, [plaintiff's] treatment records are rather sparse."  (AR at 480).  In the decision, the ALJ said only the following about plaintiff's treatment since the end of 2002:

> [Plaintiff] continues to be diagnosed with hypertension and carpal tunnel syndrome.  [Plaintiff] also had fractured her right wrist on November 28, 2002, after suffering from a fall down some stairs.  Despite her alleged ongoing pain, there is nothing in the record to suggest the limitations assigned to [plaintiff] by Dr. Moore in December 2002 have significantly changed since that time.  [AR at 376-77, 533-86].

(AR at 480).  Although the ALJ cites to the records from the East Los Angeles Health Task Force and Los Angeles County Hospital, he failed to explain the weight he gave to their

findings.  As plaintiff's treating source, the findings from the East Los Angeles Health Task Force are entitled to deference and the ALJ should have weighed the findings using all of the factors provided in 20 C.F.R. Section 404.1527, such as the length of the treatment relationship, frequency of examination, and the nature and extent of the treatment relationship.  See Orn, 495 F.3d at 631-34; Social Security Ruling ("SSR")[4] 96-2p; 20 C.F.R. § 404.1527(d)(2).  Plaintiff testified that she was treated at the East Los Angeles Health Task Force from 1999 to 2006, and submitted records documenting her treatment from 2002-2006.  Treatment notes indicate plaintiff continued to suffer from carpal tunnel syndrome (AR at 548, 551), neck pain, numbness with involuntary movement of both arms, and pain and swelling in both elbows (AR at 543).  Furthermore, plaintiff was unable to sit for ten minutes, had to stand frequently, and was unable to hold her arms in a forward position.  (AR at 543).  The ALJ failed to provide a detailed and thorough summary of the facts and conflicting clinical evidence, and state his interpretation thereof.  See Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) ("The ALJ may not reject the opinion of a treating physician, even if it is contradicted by the opinions of other doctors, without providing specific and legitimate reasons supported by substantial evidence in the record." (internal quotation marks omitted)).  Instead, the ALJ merely stated that plaintiff's treatment notes after December 2002 were sparse and acknowledged that plaintiff continued to be diagnosed with hypertension and carpal tunnel syndrome.  (AR at 480).  But the ALJ concluded that "there is nothing in the record to suggest the limitations assigned to [plaintiff] by Dr. Moore in December 2002 have significantly changed since that time."  (Id.).  Yet the treatment notes from the East Los Angeles Health Task Force indicate that plaintiff may have had greater limitations and pain than that assessed by Dr. Moore during his December 2002 evaluation.  The ALJ failed to set forth a detailed summary of the facts in these records, any conflicting clinical evidence, his own interpretation of the

---

[4]  Social Security Rulings are issued by the Commissioner to clarify the Commissioner's regulations and policies.  Bunnell v. Sullivan, 947 F.2d 341, 346 n.3 (9th Cir. 1991).  Although they do not have the force of law, they are nevertheless given deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

1  records, and specific and legitimate reasons for rejecting the opinions of plaintiff's treating

2  physicians at the East Los Angeles Health Task Force.  See Embrey v. Bowen, 849 F.2d 418,

3  421-22 (9th Cir. 1988); see also Reddick, 157 F.3d at 725 (the ALJ "must do more than offer

4  his conclusions.").

5          The ALJ similarly erred in his treatment of plaintiff's progress notes from the Los

6  Angeles County Hospital.  The progress notes indicate that in 2006 and 2007 plaintiff suffered

7  from chronic neck pain (AR at 565, 567), was in severe pain (AR at 562, 565, 583-84), and

8  complained of pain and numbness in her hands and the inability to use her hands due to pain

9  and carpal tunnel syndrome (AR at 561).  The ALJ did not provide specific reasons for

10  discrediting these findings or reconcile them with his conclusion that plaintiff did not have

11  greater limitations than those assessed by Dr. Moore during his December 2002 evaluation.

12  As plaintiff's treating source, the findings from the Los Angeles County Hospital are entitled to

13  deference and the ALJ failed to properly explain the weight he gave them.  See Orn, 495 F.3d

14  at 631-34.

15  **C.**      **Remand is Required to Remedy Defects in the ALJ's Decision**

16          The choice of whether to reverse and remand for further administrative proceedings, or

17  to reverse and simply award benefits, is within the discretion of the Court.  McAlister v. Sullivan,

18  888 F.2d 599, 603 (9th Cir. 1989).  Remand is appropriate where additional proceedings would

19  remedy defects in the ALJ's decision, and where the record should be developed more fully.

20  Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990).

21          Here, the Court finds remand appropriate.  On remand the ALJ must properly determine

22  whether medical improvement occurred pursuant to 20 C.F.R. Section 416.994(b) and discuss

23  the weight assigned to the opinions rendered during plaintiff's treatment at the East Los

24  Angeles Health Task Force and the Los Angeles County Hospital.[5]

25  _____

26          [5]  In the Joint Stipulation, plaintiff also contends that the ALJ erred in failing to properly evaluate
   plaintiff's credibility.  As explained above, however, the ALJ's error in failing to properly determine

27  whether medical improvement occurred and failure to properly evaluate the medical evidence in the
   record constitutes sufficient reason to remand this case.  Moreover, depending on the outcome of

28  the proceedings on remand, the ALJ will have an opportunity to address plaintiff's other arguments

1

**ORDER**

2      The Court, therefore, VACATES the decision of the Commissioner of Social Security

3  Administration and REMANDS this action for further administrative proceedings consistent with

4  this Memorandum Opinion and Order.

5      **LET JUDGMENT BE ENTERED ACCORDINGLY.**

6  DATED: November 13, 2008

7                                                    _____/s/-Jennifer T. Lum_____
                                                    JENNIFER T. LUM
8                                                   UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27  _____

28  again.  In any event, the ALJ should consider all the issues raised by plaintiff in the Joint Stipulation
    when determining the merits of plaintiff's case on remand.